[No. C.D. 4099. En Banc. June 23, 1983.]

*In the Matter of the Disciplinary Proceeding Against* JOSEPH C. MCMURRAY, *an Attorney at Law.*

*Robert T. Farrell* and *Robert D. Welden,* for Bar Association.

PEARSON, J.—In this case we review the Disciplinary

Board's recommendation that respondent attorney, Joseph C. McMurray, be suspended from practice for 18 months for three violations of the Discipline Rules for Attorneys. We conclude that there are no reasons for departing from the Board's recommendations and accordingly suspend Mr. McMurray from practice for 18 months.

Proceedings against respondent were formally initiated with a complaint filed with the Washington State Bar Association on May 5, 1982. The complaint alleged three counts of violations of the disciplinary rules. Count 1 alleged violations of CPR DR 7–101(A)(2) and CPR DR 9–102(A)(2) arising out of respondent's alleged failure to remit $250 entrusted to him by a client, Ms. Camilla Agibinik, to pay a fine in Anacortes Municipal Court. Count 2 alleged violations of CPR DR 4–101(B)(2) and DR 5–105 arising out of respondent's representation of another client who was charged with assaulting Ms. Agibinik. Count 3 alleged violations of DRA 1.1(j) and DRA 2.6 arising out of respondent's alleged failure to cooperate with the investigation conducted by the Local Administrative Committee (LAC) of counts 1 and 2.

A hearing of these charges was conducted on July 21, 1982. The evidence consisted of testimony from the lawyer–investigator of LAC, Ms. Agibinik, and a bar association counsel, as well as several exhibits. On July 27, 1982, the Hearing Panel Officer (HPO) entered findings, conclusions, and recommendations which may be summarized as follows.

Respondent was admitted to practice in this state in 1953. He had no law office, but transacted legal business from his Seattle home. The present proceedings were initiated by a complaint from Ms. Agibinik on October 16, 1981. The formal complaint was filed on May 5, 1982, after investigation of the charges, and service of the complaint was accepted by respondent's wife at his Alaska residence in Juneau.

Count 1 arose out of respondent's representation of Ms. Agibinik. Respondent became acquainted with Ms. Agibi-

nik through one of his clients, Charles Dunnick, who was living with Ms. Agibinik. Respondent defended Ms. Agibinik on a DWI charge in Anacortes Municipal Court, and obtained on May 6, 1981, an agreement by the prosecutor to reduce the charge to negligent driving on condition that Ms. Agibinik post and forfeit bail of $250 within 30 days.

After this matter was concluded in Anacortes, respondent accompanied Ms. Agibinik from Anacortes to her home in Seattle. On the way, they discussed Ms. Agibinik's marital problems. Ms. Agibinik's husband, a resident of Alaska, had filed for divorce. At her home, Ms. Agibinik gave respondent $450 in cash. Respondent gave Ms. Agibinik a receipt for this amount, incorrectly dated May 15, 1981, which recited that $250 was received for bail and $200 balance for fees and expenses.

During the next 2 weeks, respondent and Ms. Agibinik had further conversations by telephone. Respondent recommended that Ms. Agibinik reside in Juneau with his wife for 2 or 3 weeks so as to qualify as an Alaskan resident eligible for free representation by Alaska Legal Services.

Eventually, Ms. Agibinik decided not to pursue this course. Thereafter, in a telephone conversation on May 29, 1981, respondent advised her that he would no longer represent her in the marital matter and that he intended to retain $200 of the bail money in payment for his services in that matter. He returned the $50 balance of the bail money by means of a check dated May 29, 1981.

On June 12, 1981, Anacortes Municipal Court sent respondent notice of a hearing for the issuance of a warrant for Ms. Agibinik's arrest for failure to post bail. Respondent replied that he had withdrawn as attorney of record and that he understood the money had been remitted by Ms. Agibinik. Meanwhile, Ms. Agibinik informed the court that she had given the bail money to her attorney to pay and submitted the receipt as evidence. She subsequently made the $250 bail deposit herself, and the traffic matter was closed.

Count 2 arose out of respondent's defense of Charles

Dunnick against assault charges brought by Ms. Agibinik in late 1981. During cross examination of Ms. Agibinik, respondent made vigorous efforts to discredit her testimony by impeaching her character. He sought to expose Ms. Agibinik's marital problems with her husband and her living arrangements with Mr. Dunnick. Respondent had obtained this information both from Ms. Agibinik (during the conversations in May 1981) and from Mr. Dunnick.

At the time of trial of the assault charges, there was no attorney–client relationship in existence between respondent and Ms. Agibinik.

Count 3 related to respondent's lack of cooperation with the LAC investigation of Ms. Agibinik's complaint. The LAC attorney investigating counts 1 and 2 requested that respondent bring to a meeting his trust account records and time records. After canceling several appointments, respondent appeared at the meeting without the records. He insisted, however, that the $250 bail money had been placed in a "client account". No records of time spent or money expended on behalf of Ms. Agibinik were ever produced by respondent.

Later in the investigation, at the request of a bar association attorney for his trust account records, respondent produced photocopies of the passbook account in which the money had been deposited. These copies were arranged so as to conceal the name of the account. The investigating attorney insisted on seeing the originals of the account records and respondent promised to produce them. He did not do so. In fact, he had no further communication with the bar association on the matter prior to the hearing.

The HPO concluded that respondent had violated the Code of Professional Responsibility as follows: count 1, violations of CPR DR 7–101(A)(2) and CPR DR 9–102; count 2, violation of CPR DR 4–101(B)(2); count 3, violation of DRA 2.6. The HPO recommended 2 years' suspension for count 1, 2 months' suspension for count 2, and 6 months' suspension for count 3.

A copy of the HPO decision and a transcript of proceed-

ings were mailed to respondent's Juneau address. Respondent's wife acknowledged receipt of the transcript.

On August 31, 1982, respondent hand delivered to the state bar association office a 30-page, handwritten letter dated Friday, April 9, 1982. This letter showed as respondent's return address that to which all notices from the bar association and the HPO had been sent.

The facts set out by respondent in this letter are generally consistent with the findings of the HPO on count 1. Respondent sought to excuse his retention of the funds entrusted to him by Ms. Agibinik by asserting that she intended to cheat him of the fees he had earned. Respondent admitted he had been unaware at the time of CPR DR 9-102(A)(2) which provides that disputed fees shall not be removed from a client's trust fund. He argued, however, that this rule should not apply in this instance because the disputed amount at risk was $200, "an amount which today is substantially below any sensible level which might be fixed in recognizing a proper exception to the risks".

In respect of count 2, respondent claimed in this letter that

[m]y imperfect cross-examination of Agibinik was based entirely on information supplied by Dunnick and her own direct testimony.

Respondent goes on to suggest that

if a conflict of interest can be raised *simply* from the fact that I represented both individuals at different times on unrelated matters, an attorney practicing in a small town would soon be disbarred from making a living.

The bar association received a second handwritten letter from respondent on September 10, 1982. In this letter, respondent complained of the excessive demands on his time and financial resources of certain unspecified unsuccessful business ventures he had been pursuing in Alaska. He offered as an excuse for the lack of any documentary support for the claims in his earlier letter, the fact that his "Agibinik files" were "somewhere in boxes in Juneau". He expressed a hope that the bar association attorney to whom

the letter was addressed "could see fit to become my advocate in this matter". Finally, respondent stated an intention of being admitted in Alaska and maintaining an active practice in Juneau while remaining associated with an office in Seattle.[1]

Respondent's two letters were forwarded to the Disciplinary Board prior to its September meeting at which respondent's discipline was to be considered. The Board deemed the letters to be a motion to reopen the proceedings, and ordered that respondent be permitted to present evidence on his own behalf on condition that before October 29, 1982, he deposit $341 to be applied to the costs of the proceedings. A copy of the order and an explanatory letter were sent to respondent's Juneau address and returned unclaimed on November 5, 1982.

The Disciplinary Board subsequently entered an order unanimously adopting the HPO's findings and conclusions and modifying the recommendations as follows: count 1, 1 year's suspension; count 2, consecutive 2 months' suspension (suspended for 1 year on condition that respondent make $200 restitution to Ms. Agibinik); count 3, 6 months' suspension, consecutive to the 1 year and concurrent with the 2 months (also suspended on condition of restitution). Costs were assessed against respondent in the amount of $341. The Board's order also provided that the stays of suspension recommended for counts 2 and 3 would be void unless stipulated to by respondent within 15 days as required by DRA 5.6(i)(1). Respondent's wife accepted service of this order on December 7, 1982. Respondent has not communicated with the bar association or this court since that date.

The bar association recommends this court adopt the Board's recommendation of 18 months' suspension, plus costs of $377.96.

---

[1]Two weeks before the date of this letter, respondent was placed on inactive status in this state for failure to fulfill his continuing legal education requirements. (August 27, 1982.) His status is apparently still inactive.

We first consider the HPO's conclusions that respondent's conduct violated the Discipline Rules for Attorneys. The HPO's findings support his conclusion on count 1 that respondent violated CPR DR 7–101(A)(2) and DR 9–102.

CPR DR 7–101(A)(2) provides that an attorney shall not intentionally fail to carry out a contract of employment entered into with a client for professional services. The HPO found that respondent agreed to remit $250 to Anacortes Municipal Court on Ms. Agibinik's behalf and that he failed to carry out this promise. The findings are supported by uncontradicted evidence.

██ Respondent claimed in a letter to the Anacortes Municipal Court that he had withdrawn as Ms. Agibinik's attorney. CPR DR 7–101(A)(2) provides that an attorney may withdraw from a contract for professional services. Under CPR DR 2–110(A)(2), however, an attorney may not withdraw until he has taken reasonable steps to avoid foreseeable prejudice to the client. Ms. Agibinik would suffer substantial prejudice through failure to post bail. Having undertaken to pay $250 to the Anacortes Municipal Court, respondent should not have withdrawn until he had ensured that the court received that amount.

CPR DR 9–102 requires that clients' funds be segregated from funds belonging to the lawyer. CPR DR 9–102(A)(2) provides that a lawyer may not withdraw his fee from a client's funds until any dispute as to the fee is resolved. The HPO's findings, based on clear uncontradicted testimony, support a conclusion that respondent violated this rule. Respondent admits taking $200 from his client's funds, claiming it as a fee. However, there is no evidence that Ms. Agibinik ever agreed to even retain respondent in the marital matter, much less pay a fee. That Ms. Agibinik disputed the fee is clear from her letter to Anacortes Municipal Court as well as her testimony. Respondent was therefore not entitled to the fee until the dispute was resolved. *In re Denend*, 98 Wn.2d 699, 657 P.2d 1379 (1983).

The HPO's findings as to count 2 support a conclusion

that respondent violated CPR DR 4–101(B)(2), which prohibits an attorney, during or after the termination of the professional relationship to the client, using a confidence or secret of the client to the disadvantage of the client. A client "secret" is defined in CPR DR 4–101(A) as being information gained in the professional relationship, the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

The respondent's use of information about Ms. Agibinik's marital problems and relationship with Mr. Dunnick was use of a secret. The information was gained in the professional relationship (in discussions in May 1981); it was information which might be embarrassing or detrimental to Ms. Agibinik; and respondent used the information to Ms. Agibinik's detriment in attempting to impeach her testimony.

Respondent in his letter argues that his professional relationship with Ms. Agibinik had terminated and that, moreover, the information was readily available from Mr. Dunnick. Neither fact precludes the operation of the rule. CPR DR 4–101(B)(2) expressly applies after termination of the relationship. *Alpha Inv. Co. v. Tacoma,* 13 Wn. App. 532, 534, 536 P.2d 674 (1975). CPR EC 4–4 states, "This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge". This makes clear that Mr. Dunnick's knowledge of Ms. Agibinik's secret did not dissolve respondent's duty not to disclose it.

In essence, respondent placed himself in a situation where a conflict of interest was bound to arise by agreeing to represent Mr. Dunnick against a charge brought by Ms. Agibinik. The most appropriate course under the circumstances would have been for respondent to decline to represent Mr. Dunnick as required by CPR DR 5–105.

The HPO's findings as to count 3 support the conclusion that respondent violated DRA 2.6, which requires an attorney to cooperate with an investigation by furnishing papers or documents and a full written explanation of the matter

under investigation and by appearing when directed by the LAC.

Respondent produced some documents when requested to do so by the LAC investigating attorney. He did not, however, produce client billing records or time records as requested. In response to a request for his trust fund records, respondent furnished (after some procrastination) photocopies which at best are uninformative, and which at worst are deliberately arranged to conceal the fact that client funds were placed in a personal account. Respondent promised to furnish the originals of these records, but failed to fulfill this promise.

No written explanation of his conduct was provided by respondent before the hearing. Despite notice, respondent failed to appear at the hearing and offered no explanation. There is therefore sufficient evidence to support the conclusion that respondent violated DRA 2.6, rendering him subject to discipline under DRA 1.1(j).

■ Having concluded that respondent violated the discipline rules, we proceed now to consider the appropriate sanctions for these violations. Our approach to determining appropriate sanctions is to adopt the recommendations of the Disciplinary Board unless we are able to articulate specific reasons for adopting a different sanction.

On count 1, the Disciplinary Board recommends 12 months' suspension, reducing the HPO's recommendation of 24 months' suspension.

■ Strictly, respondent's dealings with the disputed $250 constitutes mishandling of a client's trust funds. Unless mitigating circumstances are shown, the appropriate sanction for such conduct is disbarment. *In re Denend, supra.* The only conceivable mitigating factor supported by the record is the amount in dispute. In *In re Nelson,* 87 Wn.2d 77, 549 P.2d 21 (1976), this court upheld a 60–day suspension where, among other ethical violations, an attorney withheld as a fee $500 of a client's funds, although there was no arrangement for such a fee. 87 Wn.2d at 80.

In the present case, however, respondent's conduct also

represented a violation of CPR DR 2–110(A)(2). By failing to perform as promised, respondent subjected his client at least to inconvenience, and to potential embarrassment and further criminal proceedings. No cases are cited, and none have been found, indicating the appropriate sanction for such misconduct. Given the paucity of precedent, it is difficult to conclude that 12 months' suspension is unreasonable in this instance.

On count 2, the Disciplinary Board adopted the HPO's recommendation of 2 months' suspension. We have found no cases indicating the appropriate sanction for respondent's misuse of client's secrets. The only case found on remotely similar facts is *In re Cahill,* 313 Ky. 867, 230 S.W.2d 633 (1950), where an attorney was suspended for 6 months for representing both the prosecuting witness and defendant in an action before a police court. Respondent's ethical violation is not as blatant as Cahill's, and is further mitigated by the fact that the client secrets were readily available from Mr. Dunnick. Two months' concurrent suspension does not appear unreasonable. The Disciplinary Board recommended 6 months' suspension for respondent's failure to cooperate with the investigation.

Very few cases have addressed the appropriate sanction for such a violation. A formal reprimand was appropriate in a case where the attorney had failed on three occasions to respond to requests for a conference and had failed twice to attend scheduled conferences. *In re Talbot,* 78 Wn.2d 295, 474 P.2d 88 (1970). More recently, in *In re Yamagiwa,* 97 Wn.2d 773, 783, 650 P.2d 203 (1982), this court said that an attorney's "failure to appear for his deposition is, by itself, evidence of conduct unbefitting an attorney". The appropriate sanction for such a lapse was not discussed.

We view such failure to cooperate with the investigation of charges of misconduct as a serious violation of an attorney's duties. The sanctions imposed for such violations must reflect the purpose of attorney discipline: protection of the public and preservation of confidence in the legal system. Public confidence in the legal profession, and the

deterrence of misconduct, require thorough and effective investigation of charges of unprofessional conduct. The resources of the profession being limited, such investigations depend upon the cooperation of attorneys. Lack of cooperation can only impede the investigation of complaints and undermine the public's confidence in the profession. Moreover, unless noncooperation brings severe sanctions, attorneys guilty of unprofessional conduct might be tempted to "stonewall" to prevent serious violations coming to light.

The Board's recommendation of an additional 6 months' suspension for respondent's failure to cooperate in our view adequately reflects the seriousness of the violation. We see no reason to depart from the recommendation.

Accordingly, we adopt in full the recommendation of the Board that respondent be suspended from practice for a total of 18 months (the 2 months' suspension on count 2 to be concurrent). The bar association is awarded costs of $341, plus $36.96 expended on the proceedings before this court, a total of $377.96.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., concur.