239 P.3d 332 (2010)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST John SCANNELL, (WSBA # 31035), Attorney at Law.
No. 200,744-9.
Supreme Court of Washington, En Banc.
Argued May 20, 2010.
Decided September 9, 2010.
*333 John R. Scannell, Seattle, WA, for Petitioner.
Scott G. Busby, Washington State Bar Association, Seattle, WA, for Respondent.
STEPHENS, J.
¶ 1 In 2005, the Washington State Bar Association (Bar) began investigating grievances against John Scannell in two separate matters. One involved conflicts of interest arising from representing multiple clients and from a business transaction with a client, for which conflicts Scannell had not obtained written informed consent from the clients. The other involved aiding a suspended lawyer, Paul King, in the practice of law during his suspension. Rather than cooperate with disciplinary counsel's investigation, Scannell delayed answering, refused to appear or produce documents, and challenged disciplinary counsel's and the disciplinary board's (Board) authority to investigate him. He filed frequent, repetitive motions to suspend or defeat all proceedings against him, many of which were frivolous. In the end, the hearing officer found that Scannell had negligently violated the conflict of interest rules-meriting minor sanctionbut that he had knowingly violated the rules requiring cooperation with disciplinary proceedings meriting suspension. On review, the Board concluded that Scannell had intentionally violated the rules requiring cooperation in disciplinary proceedings and that the presumptive sanction is disbarment. The Board unanimously voted to disbar Scannell. Because Scannell's obstruction of the disciplinary process poses a serious threat to lawyer self-regulation, we follow the Board's recommendation and disbar Scannell.

FACTS AND PROCEDURAL HISTORY
¶ 2 This statement of facts does not rely on the hearing officer's findings of fact, as one of the issues is whether the findings of fact are supported by the record. The statement is based on our independent review of the record.

*334 Background

¶ 3 In February 2005, the Bar began investigating an ethical grievance against Scannell relating to his representation of Paul and Stacy Matthews. Exs. R-1, R-2. Separately, the Bar began investigating Scannell for possibly aiding King's practice of law while King's law license was suspended.[1] Exs. A-405, A-411. The gist of this chargewhich the hearing officer dismissed for lack of evidence was that King, while suspended, performed legal work for Kurt Rahrig using Scannell's name and trade name, in preparation for a suit filed in federal court in Virginia.[2]See, e.g., exs. A-207, A-269-72, A-330, A-411 (litigation documents sent to Scannell as Rahrig's attorney). The Bar was investigating King as well, and Scannell defended King against the ethical charges for at least a portion of the proceedings. Ex. A328.
¶ 4 The charges against Scannell are as follows. Count I charges Scannell with failing to obtain written informed consent to conflicts of interest arising from his common representation of multiple clients. Clerk's Papers (CP) at 36-37. Count II charges Scannell with refusing to promptly respond to or cooperate with disciplinary requests and filing frivolous motions with intent to obstruct and delay the proceedings regarding count I. Id. at 39. Count III charges Scannell with knowingly assisting King in the practice of law while suspended. Id. at 41. Count IV is equivalent to count II, except that the disciplinary proceeding Scannell allegedly obstructed relates to count III, not count I. Id. at 44.

Facts Related to Count I
¶ 5 As early as 2003, Scannell represented Paul Matthews in two civil cases. Verbatim Report of Proceedings (VRP) (Dec. 2, 2008) at 83-84. One of the cases was an employment matter, on which Scannell hoped to gain the biggest contingency fee of his career. Id.; VRP (Dec. 3, 2008) at 27. While those cases were pending, Paul Matthews and his wife, Stacy Matthews, were charged with stealing computers from Paul's employer and from one of Paul's co-workers.[3] VRP (Dec. 2, 2008) at 87-88; Ex. A-104. Scannell represented both spouses in the criminal case. VRP (Dec. 2, 2008) at 88. He discussed the possibility of a conflict of interest with them, but not exhaustively. Id. at 88-91. For example, he did not discuss the possibility that each spouse might have an interest in shifting blame to the other, or that their interests might diverge from Scannell's because of his financial stake in the success of Paul's suit. Id. Scannell never obtained any written consent to the joint representation.[4] VRP (Dec. 3, 2008) at 28. He did not know at the time that written informed consent was required under former RPC 1.7(b)(2) (1995). Ex. A-406.
¶ 6 Scannell advised the Matthewses to enter Alford[5] pleas, in which the defendant pleads guilty without conceding guilt, in order to minimize the impact of the convictions on Paul's civil cases. VRP (Dec. 2, 2008) at 90-91. Stacy pled to a higher-level offense than Paul and was sentenced to one year in prison, while Paul was sentenced to only five months of work release. Exs. A-114-15, A-120, A-121. It is unclear whether this disparity was due to the stronger evidence against Stacy, or because she did not argue that Paul, who allegedly stole the computers, was more culpable. Compare VRP (Dec. 2, 2008) at 89-90; Scannell's Third Revised Opening Br. at 35, with Ex. A-104.
*335 ¶ 7 During Scannell's representation of the Matthewses on these different cases, Paul performed computer work for Scannell in Scannell's office. VRP (Dec. 2, 2008) at 84-85, 98-99. Paul understood this work to be in exchange for a $500 retainer fee that Scannell usually charged for civil cases. Id. Their agreement was informal and oral. There was no written contract specifying the rate at which Paul's work would offset the retainer or any other terms of the agreement, nor is there any evidence that Scannell advised Paul to seek the advice of another attorney before agreeing to perform the work. Id.

Facts Related to Counts II and IV
¶ 8 The Bar contacted Scannell in May 2005 to request documents under ELC 5.3(e). Ex. A-402. It asked for copies of any documents by which the Matthewses consented to common representation, a description of the terms of Paul Matthews's business transaction with Scannell, and copies of any documents in which Scannell advised Paul of those terms in writing. Id. Scannell did not respond. Ex. A-403. Instead, he asked that the investigation be deferred while two cases involving Paul Matthews were pending, and said he would respond after "the appeals on this [deferral] request have been exhausted." Id. Disciplinary counsel declined to defer the investigation because the civil cases Scannell cited were not related to the earlier criminal case or to the terms of the business transaction with Matthews. Ex. A-404. Scannell delayed responding to the Rahrig grievance as well, requiring disciplinary counsel to issue him a second notice after granting him an extension of time to respond. Exs. A-405, A-408, A-410-11.
¶ 9 When he responded, Scannell claimed to have orally informed the Matthewses of the conflicts involved in joint representation but provided no documentation. Ex. A-406. Scannell denied the existence of any "business transaction" with Paul and said that the term was too vague for him to understand, even after disciplinary counsel clarified that it meant Paul's computer work for Scannell. Exs. A-404, A-406-07, A-409, A-417, A-420. Scannell also professed not to understand the charges in the Rahrig matter, which was a Virginia case and pertained only to King. Exs. A-408, A-411, A-417. He claimed this despite knowing that he had received mail addressed to him in the Rahrig case and given it to King, ex. A-411mail that named Scannell as one of Rahrig's attorneys, exs. A269-72.
¶ 10 Disciplinary counsel then served Scannell with a subpoena duces tecum for a deposition, requiring him to produce his files in the Matthewses' criminal case and all documents related to the Rahrig matter. Ex. A-413. The deposition was postponed to accommodate Scannell's schedule. Exs. A-414-15. Scannell did not object to the deposition in any way before it occurred, but on the day of the deposition, objected that it was "oppressive." Ex. A-416. He forced disciplinary counsel to end the deposition because, under CR 30(d), the deposition had to be suspended until he could file a motion to terminate it. Id. In his motion to terminate, Scannell argued that his arrangement with Paul Matthews could not be a "business transaction" requiring written informed consent from the client, and that the facts pertaining to the Matthewses' joint representation were "straightforward and are not in dispute," so it was unnecessary for him to divulge his entire case file. Ex. A-417. Scannell dubbed disciplinary counsel's request a "fishing expedition." Id. Moreover, he questioned whether the Bar had jurisdiction to investigate the Rahrig matter, the litigation for which occurred out of state, and suggested that disciplinary counsel was using the deposition merely to gain access to privileged information relating to King's defense. Id. The chair of the Board denied the motion to terminate the deposition. Ex. A-421.
¶ 11 Scannell requested another deferral because of a motion for a new trial filed in State v. Turner, King County Superior Court No. 03-1-08552-5. Ex. A-419. Disciplinary counsel denied the request because the motion had been filed in 2004 and no action on it appeared likely. Ex. A-422.
¶ 12 Disciplinary counsel again subpoenaed Scannell for a deposition on May 4, 2006. Ex. A-423. On May 3 at about 2:00 p.m., Scannell faxed disciplinary counsel a letter *336 saying that he would not be able to attend the deposition because he had enrolled in a continuing legal education course. Ex. A-424. Disciplinary counsel rescheduled the deposition for May 19 at 2:00 p.m. Ex. A-427. On May 19 at 12:20 p.m., Scannell personally delivered a letter to the Bar officewhere the deposition was to be heldsaying that he would not attend the deposition because the Bar had not furnished him with witness travel fees pursuant to RCW 2.40.020. Exs. A-428, A-430.
¶ 13 Disciplinary counsel subpoenaed Scannell once again, this time providing him a $12 check for the 1.3-mile trip from his office to the Bar office. See exs. A-431, A-432. There is no indication that Scannell objected to anything about the deposition before arriving. At the outset of the deposition, however, Scannell objected because King had not been notified, and notice to all parties was required under CR 30(b)(1). Ex. A-433. Disciplinary counsel called Scannell's attention to the subpoena duces tecum, which indicated that the deposition was part of the investigation of a grievance against Scannell himself. Scannell acknowledged disciplinary counsel's argument, but refused to be sworn and then left. Id.
¶ 14 Scannell filed a motion with the Board seeking to terminate the deposition and quash the subpoena because notice had not been given to King as a party to the investigation. Ex. A-434. He also argued that King needed to be there to advise him whether to waive the attorney-client privilege to answer the questions. In Scannell's view, disciplinary counsel was impermissibly attempting to circumvent privilege in conducting the deposition. Id. After receiving a response and reply, the vice chair of the Board denied Scannell's motion and ordered him to comply with the three previous subpoenae duces tecum. Ex. A-440. Scannell moved to set aside this order as ultra vires because the chief hearing officer should have ruled on his motion, ex. A-441despite the fact that Scannell had directed both of his motions to the Board and did not object to the chair of the Board ruling on his first motion, exs. A-421, A-434. The motion was denied because the chief hearing officer has no authority to rule in proceedings before they have been set for a hearing. Ex. A-446.
¶ 15 In the alternative, Scannell asked for a stay of the vice chair's order pending his appeal to the Washington Supreme Court, though he never filed any appeal. Ex. A-441; Answering Br. of WSBA at 17. Because of the stay motion, Scannell sought to postpone the scheduling of the Board-ordered deposition. Ex. A-443. He also sought to postpone it to accommodate his schedule. Id. The deposition eventually occurred on September 25, 2006. Ex. A-444. On the morning of the deposition, Scannell faxed disciplinary counsel notice that he would not attend because he intended to challenge the proceedings in court on due process grounds. Exs. A-447, A-448. In the end, Scannell never attended a deposition, nor did he produce any of the requested documents until the next-to-last day of the disciplinary hearing, which occurred over two years later, in December 2008. VRP (Dec. 3, 2008) at 6-11.
¶ 16 Scannell filed a "Petition for Writ of Prohibition, Mandamus, Injunction, [and] Complaint for Declaratory Judgment" in the King County Superior Court against the State, the Bar, the Board, the former chair of the Board, and disciplinary counsel. Answering Br. of WSBA at 35 (citing Scannell v. State, King County Superior Court No. 06-2-33100-1). The Bar's general counsel moved to dismiss as to all defendants for lack of subject matter jurisdiction. Id. at 36. The Court of Appeals affirmed dismissal, and we denied review. Id.; Scannell v. State, 166 Wash.2d 1039, 217 P.3d 783 (2009); accord Scannell's Third Revised Opening Br. at 49.
¶ 17 On May 30, 2007, while Scannell's suit was pending, disciplinary counsel filed a formal complaint alleging the four counts described above. CP at 34-45. Scannell responded with a series of duplicative motions to recuse or disqualify disciplinary counsel, all proposed hearing officers, and the entire Board because of a conflict of interestthe conflict being that the parties were adverse to Scannell and witnesses in this "pre-existing lawsuit." CP at 48-64, 122-40, 199-216, 527-32; see also id. at 212 (source of quote); id. at 195-97 (responding to another such *337 motion that appears not to have been properly served and filed). Scannell asked the Bar to convene and pass a rule to have a special tribunal adjudicate his case, "preferably out of state." Id. at 48, 122-23, 199. He also contended that disciplinary counsel had ex parte contacts with the Board and the hearing officers when mounting a common defense to his suit, which disqualified them for conflict of interest and under the "appearance of fairness" prong of due process. See id. at 212-13; Scannell's Third Revised Opening Br. at 14. The chief hearing officer and the Board removed some of the appointed hearing officers in response to these motions, but otherwise denied the motions. CP at 118, 146, 170-72, 538.
¶ 18 Scannell objected to the setting of a hearing in the matter and twice moved to postpone the hearing date. Id. at 179-82, 322-23, 329-32. He requested extensive discovery, asking the office of disciplinary counsel to review all of its grievance files since 1997. Id. at 180, 217, 228-29. His explanation for the request was: "The [respondent] wishes to conduct discovery. The attached discovery is reasonable and necessary for the development of his case." Id. at 217. In fact, Scannell wished to discover facts related to his theory that disciplinary counsel was retaliating against him for filing a grievance against former Attorney General Christine Gregoire. Id. at 180; Scannell's Third Revised Opening Br. at 28-29. The Bar opposed the discovery on grounds of relevance, privilege, excessive burden, and lack of necessity, arguing that Scannell's "conspiracy theory" alone could not support his request. CP at 227-32. The hearing officer allowed Scannell's discovery request only as to the time period when his grievance was being investigated. Id. at 266-68. Meanwhile, Scannell never completely responded to the Bar's discovery requests, claiming lack of time and resources to produce all of the documents. Id. at 329-31, 522-23; VRP (Dec. 3, 2008) at 6-11. The discovery requests sought documents that disciplinary counsel had previously subpoenaed three times, beginning in 2005. See id.; Ex. A-413.
¶ 19 The disciplinary hearing occurred in December 2008. VRP (Dec. 1, 2008) at 5. At its conclusion, the hearing officer dismissed count III, alleging that Scannell had aided King in the unlicensed practice of law, for lack of sufficient proof. Decision Papers (DP) at 1. Counts I, II, and IV were proved. Id. at 9-10. The hearing officer concluded that Scannell had negligently violated former RPC 1.7(b)(2) by failing to obtain written informed consent to the conflict of interest in his joint representation of the Matthewses. Id. at 9. The presumptive sanction for this violation was a reprimand. Id. at 10. In addition, by failing to comply with the investigations into counts I and III with the intent to frustrate the proceedings, Scannell knowingly violated RPC 3.1 and 8.4(l).[6]Id. at 9-10. The presumptive sanction for these violations was suspension. Id. at 10. The hearing officer recommended suspending Scannell for two years, plus any additional time necessary to show he had complied with the subpoenas in this case. Id. at 11.
¶ 20 The Board reviewed Scannell's suspension and amended the conclusions of law regarding counts II and IV. DP at 20-21. The Board concluded that Scannell had intentionally violated RPC 3.1 and 8.4(l) by failing to cooperate in the investigations with the intent to frustrate and delay the disciplinary proceedings. Id. The presumptive sanction for these intentional violations was disbarment. Id. at 21. The Board unanimously voted to disbar Scannell. Id. at 20-21 & n. 2.
¶ 21 Scannell appealed to this court. Id. at 23. Before oral argument, he moved for extensions of time to file his brief and two revised briefs, ostensibly to correct his citations to the record. The revised briefs did more than merely correct the record citations, and so were rejected for filing. Order, In re Disciplinary Proceeding Against Scannell, No. 200,744-9 (Wash. Mar. 26, 2010). Scannell's subsequent motion to modify was *338 denied.[7]Id. He also moved for a reference hearing based on the malicious prosecution theory that the Bar is retaliating against him for filing a grievance against former Attorney General Gregoire, and based on new evidence suggesting that the office of disciplinary counsel asserted, in a different case, that the superior court was the proper forum for adjudicating a motion to terminate a deposition under the ELC. Motion to Allow the Taking of Additional Evidence (RAP 9.11), No. 200,744-9 (Wash. Feb. 19, 2010). This motion was denied.[8] Order, supra.

ISSUES
1. Does the record support the Board's findings of fact and conclusions of law as to each count?
2. Did procedural or other irregularities undermine the fairness of the disciplinary proceedings?
3. What is the appropriate sanction?

ANALYSIS

1. Does the record support the Board's findings of fact and conclusions of law as to each count?
¶ 22 "This court bears the ultimate responsibility for lawyer discipline in Washington." In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 329, 157 P.3d 859 (2007). Nevertheless, we defer to the hearing officer's findings of fact, upholding them if they are supported by substantial evidence. Id. at 330, 157 P.3d 859. Substantial evidence supports a finding if the record would persuade a fair and rational person that the finding is true. Id. We also respect the hearing officer's evaluation of the credibility of the evidence, and generally uphold findings of fact based on conflicting evidence. Id.
¶ 23 The recitation of the facts should make clear that the finding that Scannell failed to fully advise the Matthewses in writing is supported in the record. Scannell informed the Matthewses of some of the conflicts inherent in joint representation, but appears not to have clearly spelled out others. However, the judicial colloquy with the Matthewses, combined with the fact that Stacy Matthews appears to have given informed consent to the most significant conflict (that her Alford plea would help Paul's civil case) suggests that this violation was a matter of negligence. No one has suggested that Scannell knowingly or intentionally tried to hoodwink Stacy Matthews. His failure to obtain consent in writing appears to have been an honest mistake, albeit one showing that Scannell was not familiar with the ethical rules. See former RPC 1.7(b)(2) (requiring written consent after "consultation and a full disclosure," and specifically mentioning joint representation). We adhere to the hearing officer's holding that Scannell negligently violated former RPC 1.7.
¶ 24 The more important issues are counts II and IV, which require us to determine if Scannell's numerous motions and objections during the disciplinary process were a good-faith defense to the charges, or were brought simply to delay or frustrate the proceedings.
¶ 25 ELC 5.3(e) and 5.5(c) establish a lawyer's affirmative duty to comply with disciplinary requests and investigations. Such compliance is vital. In re Disciplinary Proceeding Against Clark, 99 Wash.2d 702, 707, 663 P.2d 1339 (1983). Our profession is self-regulated, and disciplinary proceedings necessarily "depend upon the cooperation" of the attorneys involved. In re Disciplinary Proceeding Against McMurray, 99 Wash.2d 920, 930-31, 665 P.2d 1352 (1983). ELC 5.3(f)(3) specifically makes noncooperation a ground for discipline. RPC 8.4(l) absorbs this requirement by making it professional misconduct to violate a duty imposed by the ELC in connection with a disciplinary matter. ELC *339 1.5. And RPC 3.1 admonishes lawyers not to raise frivolous claims or defenses, i.e., lawyers are to raise only claims or defenses based on good-faith legal argument. Thus, if Scannell brought frivolous claims or defenses during the disciplinary proceedings in a bad-faith attempt to frustrate and delay the proceedings, he violated RPC 3.1 and 8.4(l).
¶ 26 The hearing officer, at several times, found that Scannell's behavior was intended to frustrate and delay the disciplinary proceedings. DP at 4-8. This is a factual assertion about Scannell's state of mind and will be upheld if supported by substantial evidence. See Marshall, 160 Wash.2d at 330, 157 P.3d 859.
¶ 27 The record clearly supports this finding. Scannell's attempts to avoid subpoenae revealed his intent to delay and frustrate the proceedings. A few adjustments for Scannell's schedule and a good-faith objection or two as to the scope of the investigation would, of course, have been allowable. But Scannell managed to avoid producing documents for over three years by repeatedly delaying, rescheduling, or refusing to attend depositions on one ground after another. He never raised his concerns with disciplinary counsel in a timely fashion in order to allow their resolution prior to the deposition. Instead, he waited until the last minute, so that no resolution could occur and the deposition would have to be rescheduled. The hearing officer could easily conclude that Scannell was attempting to frustrate and delay the proceedings.
¶ 28 Moreover, many of the objections that Scannell raised were frivolous. For example, his request for witness travel fees, following on the heels of his repeated reschedulings and cancellations, appeared to mock the disciplinary process. The travel fees in question were negligible, as was any hardship from not receiving these fees. Indeed, Scannell traveled to the site of the deposition to give notice of his nonappearance for lack of travel fees less than two hours before it began. He could easily have delayed this 1.3 mile trip by two hours and participated in the deposition before reminding disciplinary counsel that the Bar owed him $12.
¶ 29 Scannell also used his "confusion" about the business transaction issue and the nature of the Rahrig charges to attempt to avoid compliance. Yet, Scannell's filings throughout the proceedings make clear that he knew what he was being investigated for: the computer work done by Paul Matthews at his office and the possible aiding of King's representation of Rahrig while King was suspended. The fact that Scannell believed that the computer work had not been a "business transaction" under RPC 1.8(a), or that he had not aided King, does not change the fact that he knew what he was being investigated for and did not cooperate.
¶ 30 Finally, Scannell's lawsuit against everyone who could enforce the ELCs, and his subsequent attempts to disqualify the same parties in his disciplinary proceedings for conflict of interest, were groundless. Scannell argued in his suit that the Board had no jurisdiction to determine the validity of the subpoenae against himbut he had himself already addressed motions to the Board to terminate the subpoenae and sued in superior court only after he was dissatisfied with the result. The trial court and the Court of Appeals determined they had no jurisdiction to entertain the suit. Scannell then moved at every opportunity to disqualify the entire Board, all the hearing officers, and disciplinary counsel because of the "preexisting lawsuit." CP at 212. The suit was not preexisting. Scannell sued all of the players involved in his pending ELC proceedings, and such a suit is not a ground for disqualification. See, e.g., In re Ronwin, 139 Ariz. 576, 586, 680 P.2d 107 (1983) ("To honor such a technique would be to put the weapon of disqualification in the hands of the most unscrupulous.").
¶ 31 The hearing officer's finding that Scannell intended to frustrate and delay the disciplinary proceedings against him was amply supported by the evidence. The Board concluded from this finding that Scannell intentionally violated RPC 3.1 and 8.4(l). Seeing as these rules required Scannell to cooperate in the disciplinary proceedings and dispute them only in good faith, the Board's legal conclusion follows from the finding of intent to delay and disrupt the proceedings. *340 We adhere to the Board's determination that Scannell intentionally violated these rules.

2. Did procedural or other irregularities undermine the fairness of the disciplinary proceedings?
¶ 32 Scannell challenges the proceedings below on several procedural grounds. First, he asserts that his motions to terminate his depositions were addressed to the Board as a whole, but the chair of the Board "short-circuited" decision on them. Scannell's Third Revised Opening Br. at 28. The Chair was biased by ex parte contacts with disciplinary counsel, he says, and was retaliating against Scannell for filing an ethical grievance against former Attorney General Gregoire. Scannell argues that this violated due process.
¶ 33 The "short-circuited" argument is at odds with Scannell's filings below and in this court, where he alternately claimed that the chief hearing officer or the superior court, not the Board, should rule on his motions. See Ex. A-446; Mot. to Allow the Taking of Additional Evidence (RAP 9.11) at 14. There is no evidence of impropriety on the chair's or vice chair's partany ex parte contacts arose because Scannell sued the chair and disciplinary counsel, and then the Bar's general counsel obtained a dismissal of the suit for both of them. There is no evidence that the chair, vice chair, disciplinary counsel, or anyone else was retaliating against Scannell for filing a grievance against anyone.
¶ 34 Scannell blames his lack of evidence of retaliation on the one-sided nature of the discovery. Disciplinary counsel was allowed to "demand oppressive depositions and make oppressive discovery requests, without any showing of good cause," while the hearing officer largely denied Scannell's discovery requests. Scannell's Third Revised Opening Br. at 28-29. Scannell argues that this violated due process.
¶ 35 Disciplinary counsel received two grievances regarding Scannell, and had a duty to review and investigate those alleged ethical violations. ELC 5.3(a). As part of the investigation, disciplinary counsel has the right to issue subpoenae before filing a formal complaint. ELC 5.5. This was enough "good cause" to make disciplinary counsel's requests permissible before the hearing was set. The fact that disciplinary counsel could never acquire the requested documents was cause enough to allow a discovery request under ELC 10.11 once the hearing was set. In contrast, Scannell could point to no evidence for his assertion that disciplinary counsel's requests, which were facially relevant to ethical violations Scannell allegedly committed, were in fact a pretext and retaliatory. Scannell proposed a discovery requirement that disciplinary counsel review every grievance file since 1997, without a well-developed argument for why it was relevant to the case at hand and what the resulting evidence would prove. The hearing officer allowed Scannell to review grievance procedures during the time his investigation was pending to find support for his retaliation theory. This was a reasonable exercise of the hearing officer's broad discretion to regulate discovery under ELC 10.11(d), not a violation of due process.
¶ 36 Scannell also argues that the hearing officers in his case, including the chief hearing officer, were witnesses or adverse parties and so should have been disqualified. They were witnesses presumably because they could testify as to disciplinary counsel's prosecutorial practices, which Scannell alleged were retaliatory. They were adverse only because of Scannell's lawsuit against the State, the Bar, the Board, and others.
¶ 37 Scannell styles this claim in several different ways. He argues that it violated due process for these hearing officers to adjudicate any part of the case (or, as to the chief hearing officer, to appoint new hearing officers). He also argues that it violated due process because it created an appearance of unfairness. He renews his argument about ex parte contacts between the hearing officers and disciplinary counsel while they were jointly defending his lawsuit, suggesting that the adjudicative and prosecutorial functions of the hearing officers were inextricably intertwined (also a violation of due process). Finally, he argues that disciplinary counsel is *341 seeking higher penalties because of his objections to the procedures throughout the disciplinary proceedings, which he contends is unconstitutional malicious prosecution.
¶ 38 None of these arguments is winning. The different hearing officers in this case were not witnesses because their testimony would have been irrelevant: Scannell could not make any minimal showing in support of his retaliation claim, on which the hearing officers would allegedly testify. The hearing officers were adverse parties to Scannell only because he sued everyone who could enforce the ELC, which is not a ground for disqualification. Any ex parte contacts with the disciplinary counsel arose from the same suit. It does not tarnish the proceedings' fairness to prevent Scannell from circumventing the disciplinary process through the expedient of filing a lawsuit. Nor does it make otherwise-independent judicial officers seem more prosecutorial for having obtained a dismissal of the suit. Finally, disciplinary counsel is not seeking a higher penalty to retaliate against Scannell for asserting his rights; the higher penalty was sought for bringing motions not based on good-faith assertions of procedural rights in order to delay and frustrate the proceedings.[9]

3. What is the appropriate sanction?
¶ 39 Sanctions for ethical violations are governed by the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 ed. & Supp.1992) (ABA Standards), available at http://www.abanet.org/cpr/regulation/standards_sanctions.pdf. Marshall, 160 Wash.2d at 342, 157 P.3d 859. We first determine whether the Board applied the correct presumptive sanction, given the ethical duties violated, the lawyer's mental state, and the actual or potential injury flowing from the misconduct. Id. We then turn to aggravating and mitigating factors. Id. Finally, we consider the unanimity (or lack thereof) of the Board's recommendation and the proportionality of the punishment. Id.

a. Presumptive Sanction
¶ 40 ABA Standards standard 4.3 is applicable to failure to inform a client of a conflict of interest. In re Disciplinary Proceeding Against Egger, 152 Wash.2d 393, 415, 98 P.3d 477 (2004). As discussed above, Scannell negligently failed to fully inform his client in writing of a conflict of interest. The Board correctly recognized that the presumptive sanction for such a negligent failure in a criminal case, in which the conflict could cause injury to Stacy Matthews, is a reprimand. See ABA STANDARDS std. 4.33 (recommending reprimand for negligent failure to inform a client of a conflict interest if there is actual or potential injury).
¶ 41 ABA Standards standard 7.0 applies to violations of the duty to cooperate in disciplinary investigations. See In re Disciplinary Proceeding Against Poole, 164 Wash.2d 710, 730-32, 193 P.3d 1064 (2008) (applying ABA Standards standard 7.2). We adhere to the Board's finding that Scannell intentionally failed to cooperate in disciplinary proceedings with the intent to frustrate and delay those proceedings. The Board correctly determined that the presumptive sanction for such obstruction, which intended to delay any sanction against Scannell and required the Bar to expend excessive resources investigating him, is disbarment. See ABA STANDARDS std. 7.1 (recommending disbarment for knowing violations of ethical rules with intent to benefit the lawyer, if the violations cause serious injury to the legal system).
¶ 42 Scannell has caused serious injury to the legal system by dragging out his disciplinary proceedings for five years. The resources of the Bar to prosecute ethical violations are limited and depend upon the cooperation of the attorneys involved. Clark, 99 Wash.2d at 707, 663 P.2d 1339; *342 McMurray, 99 Wash.2d at 931, 665 P.2d 1352. Moreover, Scannell never fully complied with disciplinary counsel's discovery requests, and one of Scannell's alleged violations was dismissed. It is possible that, through stonewalling, Scannell was able to prevent disciplinary counsel from obtaining enough evidence to prove he had violated the RPCs.[10] This is a serious potential injury. If every lawyer subject to a disciplinary investigation were as intransigent as Scannell has been, disciplinary proceedings would be expensive, long, and hard-fought procedural wars that might or might not be effective at uncovering wrongdoing and protecting the public. In short, Scannell's behavior poses a serious threat to lawyer self-regulation and is rightfully redressed under ABA Standards standard 7.1.

b. Aggravating and Mitigating Factors
¶ 43 The Board found four aggravating factors; each is supported in the record. The first aggravator was a prior disciplinary offense. DP at 10; see also ABA STANDARDS std. 9.22(a). Scannell was previously admonished for failing to supervise one of his employees. See Ex. A-500 (final three pages).
¶ 44 The second aggravator was selfish motive. DP at 11; see also ABA STANDARDS std. 9.22(b). Scannell challenges this finding because, he claims, he was trying to challenge an unconstitutional subpoena in the interests of his client, King, which is not selfish. This argument ignores the fact that the subpoena targeted Scannell himself in the investigation of a grievance against Scannell. Scannell knew this because disciplinary counsel said it to him, in his presence, during one of the aborted depositions. Ex. A-433. The record supports the Board's finding that Scannell intended to frustrate and delay the disciplinary proceedings against him, which is a selfish motive because Scannell would thereby escape sanction.
¶ 45 The third aggravator was multiple offenses. DP at 11; see also ABA STANDARDS std. 9.22(d). We have adhered to the Board's holding that Scannell violated the ethical rules on each of the three counts. These three offenses support finding the aggravator.
¶ 46 The final aggravator was that Scannell refused to acknowledge the wrongfulness of his conduct. DP at 11; see also ABA STANDARDS std. 9.22(g). Scannell believes that his challenges to the disciplinary proceedings have been well-founded, describing disciplinary counsel as a "fascist" who seeks to "terrify the population into submitting to illegal depositions." VRP (Dec. 1, 2008) at 56. In his brief before this court, Scannell cautioned us about "precedent which could lead to a police state" and reiterated his unsubstantiated claims about malicious prosecution and retaliation for his previous grievance against former Attorney General Gregoire. Scannell's Third Revised Opening Br. at 2, 28-29. The record therefore supports the finding of the aggravator.
¶ 47 The Board found no mitigating factors. Scannell argues that the Board erred in not finding two mitigating factors: the absence of selfish motive and his good-faith effort to provide written disclosures to the Matthewses once he learned of the requirement. See ABA STANDARDS std. 9.32(b), (d). As explained above, the record supports the Board's rejection of the first of these factors. For the sake of argument, we will credit Scannell's second proposed mitigating factor. But, this factor pertains solely to the violation of former RPC 1.7 in count I; it does not apply to counts II and IV, for which the presumptive penalty is disbarment.

c. Unanimity and Proportionality
¶ 48 We generally give more weight to the Board's recommendation than we do to the hearing officer's. In re Disciplinary Proceeding Against Vanderveen, 166 Wash.2d 594, 615, 211 P.3d 1008 (2009). We also afford the Board's recommendation greater weight when it is unanimous. See id. *343 at 616, 211 P.3d 1008 (deferring to the Board's recommendation upon a 10-1 vote). In Vanderveen, we deferred to the Board under the unanimity factor even though the Board's recommendation of disbarment differed from the hearing officer's recommendation of suspension. Id. at 599, 616, 211 P.3d 1008. Here, the Board unanimously voted to disbar Scannell. Given our analysis in Vanderveen, the unanimity factor weighs in favor of deference to the Board, despite the fact that the hearing officer recommended only suspension.
¶ 49 Scannell argues that disbarment would be disproportionate to his conduct. He quotes from In re Disciplinary Proceeding Against Eugster, 166 Wash.2d 293, 324-25, 209 P.3d 435 (2009), in which we said that disbarment has generally applied to four categories of misconduct: commission of a felony of moral turpitude, forgery or other fraudulent conduct, misappropriation of client funds, and extreme lack of diligence. Id. We concluded that "It would be unusual, perhaps unprecedented, to disbar a lawyer who does not have a disciplinary history for misconduct involving a single client in a single proceeding for conduct that lasted approximately two months unless it fell within one of these categories." Id. at 325, 209 P.3d 435. On its face, this conclusion does not apply to Scannell. Scannell has a disciplinary history, his misconduct involves more than one client and more than one proceeding, and his misconduct persisted for years.
¶ 50 Scannell cites to no other case suggesting that disbarment is disproportionate.[11] The disciplined attorney bears the burden of demonstrating that the Board's sanction is disproportionate. Marshall, 160 Wash.2d at 349, 157 P.3d 859. Because the presumptive sanction for counts II and IV is disbarment and there are multiple aggravating factors and no mitigating factors as to those counts, the Board was unanimous in recommending disbarment. Yes, this sanction is harsh, but Scannell has not demonstrated that the sanction is disproportionate. We conclude that disbarment is the appropriate sanction.

CONCLUSION
¶ 51 Scannell engaged in a deliberate attempt to stonewall, prolong, and ultimately defeat the disciplinary proceedings against him. Thus far, his campaign has been successful: he managed to drag out the disciplinary process for five years, consuming far more of the Board's resources than were necessary for a good-faith, thorough resolution of his case. He continues to assert that his conduct is upright and characterizes the entire disciplinary process as "fascist." Scannell's conduct throughout the proceedings undermines the self-governing nature of the practice of law: if all lawyers accused of misconduct were as intentionally uncooperative as Scannell has been, self-regulation would be impossible. The threat such conduct poses to the profession merits severe punishment. Therefore, we disbar John Scannell.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, TOM CHAMBERS, SUSAN OWENS and MARY E. FAIRHURST, Justices.
ALEXANDER, J. (dissenting).
¶ 52 I disagree with the majority's determination that John Scannell should be disbarred for not cooperating in the disciplinary process. In my judgment, the hearing officer's recommendation that Scannell be suspended from the practice of law for a period of time is a more appropriate sanction under the circumstances, and I would have concurred in a decision imposing a suspension for a reasonable period. Since that is not the will of the majority, I dissent.
¶ 53 I reach the conclusion that I do because the sanction the Washington State Bar *344 Association Disciplinary Board has recommended to this court for Scannell's underlying misconduct, i.e., negligently failing to obtain written informed consent to conflicts of interest arising from common representation of multiple clients,[1] is a mere reprimand. The majority accepts that portion of the Disciplinary Board's recommendation and yet disbars Scannell. To disbar Scannell for noncooperation in the disciplinary process that has led to imposition of the relatively minor sanction of reprimand strikes me as excessive.
¶ 54 It is significant that almost all of the conduct by Scannell that is characterized by the majority as abuse of the discipline system is conduct that Mr. Scannell engaged in pursuant to the Enforcement of Lawyer Conduct Rules and Washington court rules. Although this activity was for the most part misguided, frivolous, and undoubtedly irritating to the bar, as well as the hearing officer and Disciplinary Board, it is apparent to me that Scannell was sincere in his efforts and was not engaging in this activity simply for the purpose of obstructing the process. While I agree with the majority that disbarment is a sanction that may be imposed for intentional failure to cooperate in disciplinary proceedings, it is only a presumptive sanction. In my view, this most severe of sanctions, disbarment, should be reserved for cases where the noncooperation is egregious and engaged in solely for the purpose of obstructing the system. For example, disbarment would appear to be appropriate in cases where an attorney intentionally makes himself or herself scarce and repeatedly fails to appear for depositions or hearings. The complaint against Scannell, when it is reduced to its essence, appears to be that he was too persistent a presence, asserting multiple objections to the proceedings against him and arguing for delays and rescheduling. I have no doubt that this conduct was irksome and caused the bar to view Scannell, in plain terms, as "a pain in the neck."
¶ 55 It is my belief after reviewing the record and observing Mr. Scannell during his argument before this court that although most of his allegedly noncooperative activity was akin to "tilting at windmills,"[2] it was based on his sincere belief that the positions he took were meritorious and were properly asserted against what he deemed, albeit wrongly, an oppressive disciplinary process. Although I agree with the majority that this court must be concerned about efforts one might take to undermine the disciplinary process, I am hopeful that it will agree with me that we must also be careful to not convey the impression that an attorney's vigorous defense against allegations of misconduct is noncooperation per se. Much of what Scannell did during the long history of this case was certainly unreasonable, but it was largely conducted under the rules governing the disciplinary process. For the portion of those activities that he should have known were totally without merit, a suspension is an adequate sanction.'
WE CONCUR: JAMES M. JOHNSON and RICHARD B. SANDERS, Justices.
NOTES
[1] King's disciplinary proceeding came before the court last term. In re Disciplinary Proceeding Against King, 168 Wash.2d 888, 232 P.3d 1095 (2010).
[2] We consider this dismissed charge only as background for count IV.
[3] The Matthewses were each charged with first degree trafficking in stolen goods; Paul was also charged with two counts of first degree theft. Ex. A-104.
[4] There was a colloquy between the Matthewses and the judge at arraignment, however, during which they indicated that Scannell had told them about the conflict of interest from joint representation. VRP (Dec. 2, 2008) at 92-93, 95-96.
[5] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[6] The hearing officer found several times that Scannell's behavior had been motivated by an intent to frustrate and delay the proceedings rather than by a good-faith procedural dispute. DP at 4-8 (findings nos. 1.2.3, 1.2.5, 1.3.3-.5, 1.3.7, and 1.3.9).
[7] However, Scannell was allowed to file a revised brief doing no more than correcting his citations to the record.
[8] Scannell offered no specifics about what the reference hearing would uncover on the retaliation claim, other than his own assertions of disciplinary counsel's bad faith. The Bar's position about motions to terminate in the other case was consistent with its position in this case: that the hearing officer has no authority to rule on motions in grievances that have not been set for a hearing. See WSBA's Answer to Resp't's Mot. to Allow Additional Evidence at 5-6.
[9] Scannell vigorously asserts that one of his procedural grounds for delaying the proceedings, in particular, was not frivolous. He repeatedly moved to quash the State's subpoenas in the Rahrig matter, arguing that the State had to provide notice to all targets of the investigation before the deposition was permissible. Even if this were true (which we need not decide here), the State notified Scannell of the depositions, and Scannell was the target of the investigation. Disciplinary counsel pointed this out to Scannell at one of the depositions. Ex. A-433. This factual matter, and not the merits of Scannell's legal argument, are what made his motions to quash frivolous.
[10] Scannell notes that he delivered all of the requested Rahrig documents on the second day of the three-day hearing, yet disciplinary counsel could not produce enough evidence to support the violation. According to Scannell, this proves that the original charge was unfounded. In fact, all it suggests is that disciplinary counsel was unable to marshal this evidence, which took three years to arrive, in a single day.
[11] He does argue that one of the Bar's cases is inapposite, however. In a supplemental statement of authority Scannell submitted after oral argument, Scannell contested the Bar's reliance on Clark, 99 Wash.2d 702, 663 P.2d 1339, to show that a lawyer's noncooperation can result in disciplinary sanction independent of an underlying violation. We have considered this and the other arguments in the supplemental briefing and incorporated them into our decision. In recognition of the dispute over Clark, we have cited it only for general propositions and do not apply it fact-for-fact to Scannell's case.
[1] The proof of the other underlying count against Scannell, allegedly aiding another person in the practice of law, was so lacking that the hearing officer dismissed it.
[2] MIGUEL DE CERVANTES SAAVEDRA, DON QUIXOTE DE LA MANCHA (Samuel Putnam trans., Modern Library 1998) (1615). Don Quixote mistook windmills for giants and attacked them.