# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 91

*April Term, A.D. 2020*

*July 15, 2020*

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

D-20-0002

MICHAEL J. PEARCE, WSB #
7-4838,

Respondent.

## ORDER OF DISBARMENT

[¶ 1]   **This matter** came before the Court upon the Board of Professional Responsibility's "Report and Recommendation for Order of Disbarment," filed herein June 2, 2020. The Court notes Respondent Michael J. Pearce did not file any objection to the Report and Recommendation. See Rule 16, Wyoming Rules of Disciplinary Procedure. The Court, after a careful review of the Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Michael J. Pearce should be disbarred. It is, therefore,

[¶ 2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's "Report and Recommendation for Order of Disbarment," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3]   **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Order of Disbarment, Respondent Michael J. Pearce shall be, and hereby is, disbarred, effective immediately; and it is further

[¶ 4]   **ORDERED** that Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules. That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶ 5]   **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall reimburse the Wyoming State Bar the amount of $549.75, representing the costs incurred in handling this matter, as well as pay administrative fees of $1,500.00. Respondent shall pay the total amount of $2,049.75 to the Wyoming State Bar on or before October 1, 2020. If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶ 6]   **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment, as a matter coming regularly before this Court as a public record; and it is further

[¶ 7]   **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 8]   **ORDERED** that the Clerk of this Court cause a copy of this Order of Disbarment to be served upon Respondent Michael J. Pearce.

[¶ 9]   **DATED** this 15th day of July, 2020.

BY THE COURT:

/s/

**MICHAEL K. DAVIS**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JUN 02 2020

PATRICIA BENNETT, CLERK

by DEPUTY

BEFORE THE SUPREME COURT

STATE OF WYOMING

*In the matter of*
**MICHAEL J. PEARCE**
**WSB No. 7-4838,**

*Respondent.*

)
)
)
)
)

*BPR Nos. 2019-075 & 2019-126*

# D-20-0002

---

## REPORT AND RECOMMENDATION FOR ORDER OF DISBARMENT

---

THIS MATTER came before a Hearing Panel of the Board of Professional Responsibility of the Wyoming State Bar ("BPR") on May 14, 2020, for a telephonic sanction hearing pursuant to Rule 15(b)(3)(C), W.R.Disc.P. Panel members Christopher H. Hawks (Chair), Janine Thompson and Robert C. Jarosh were in attendance. The Wyoming State Bar was represented by Bar Counsel, Mark W. Gifford. Respondent appeared on his own behalf.

### Procedural History

1. The Formal Charge in this matter (which consolidated two separate disciplinary investigations) was filed on January 9, 2020. Personal service was made on Respondent on January 16, 2020. Said service was effective pursuant to Rule 13(b), W.R.Disc.P.

2. Respondent did not file an answer and default was entered on February 10, 2020. As a result of Respondent's failure to file an answer, all allegations of the Formal Charge are deemed admitted.

3. On March 5, 2020, an Order Setting Sanction Hearing was issued.

4. On April 28, 2020, an Order Setting Telephonic Sanction Hearing and Setting Deadline was issued. The order required the parties to file listings of hearing exhibits and witnesses (with hearing exhibits attached) by May 7, 2020. Respondent did not file a listing of hearing exhibits and witnesses.

5.    All members of the Panel were in attendance at the May 14, 2020, sanction hearing, as were Bar Counsel and Respondent.

6.    Bar Counsel's Exhibits BC-1 through BC-7 were received into evidence without objection from Respondent.

## Findings of Fact

7.    Respondent is currently serving a one-year suspension, commencing August 22, 2019. *See Board of Prof. Resp. v. Pearce*, 2019 WY 85, 446 P.3d 717 (Wyo. 2019). Respondent was admitted to the Wyoming State Bar in 2012 and at all times relevant to this proceeding maintained a private practice of law in Laramie, Wyoming.

## BPR No. 2019-075

8.    The investigation in BPR No. 2019-75 commenced following receipt on July 2, 2019, of a complaint from Donald Gene Sikora, a client of Respondent. Respondent represented Mr. Sikora in a criminal matter in circuit court in Rawlins. Mr. Sikora complained that Respondent failed to communicate with him and failed to return the file after the representation ended. Mr. Sikora provided a detailed timeline regarding his communications with respondent from early May through late June 2019. According to the timeline, Respondent advised Mr. Sikora that he was terminating his representation of Mr. Sikora on June 24, 2019:

> I wanted to advise I will be sending your file as I will be withdrawing from your case. I have engaged in other pursuits that keep me from practicing law and have not been able to dedicate time sufficient to it. I need to copy your file before sending it to you. This way you can find more attentive help than I can provide right now.

9.    On July 8, 2019, Bar Counsel initiated an investigation, sending a copy of Mr. Sikora's complaint and requesting a written response by July 22, 2019. Bar Counsel cited possible violations of Rule 1.3 (diligence), Rule 1.4 (communication with client) and Rule 1.16 (termination of representation.

2

10. Respondent did not submit a timely written response. On July 24, 2019, Bar Counsel sent another letter requesting a response and reminding Respondent of his obligation to cooperate with Bar Counsel's inquiries pursuant to Rule 8.1(b), W.R.Prof.Cond., and Rule 8(a), W.R.Disc.P. Respondent did not respond.

11. On August 14, 2019, the Wyoming Supreme Court issued an order approving Respondent's stipulated, one-year suspension, with the period of suspension to commence August 22, 2019.

12. On September 9, 2019, Bar Counsel received the following from Respondent:

### Response to Sikora Complaint

Instead of going through a point by point response, I have decided to give my recounting of my service to Mr. Sikora. In late winter or early spring of 2017, I was retained by Mr. Sikora for representation in a criminal matter concerning charges against him in Rawlins, Carbon County, Wyoming. Trial was set for November, 2017, wherein we had a day long trial and he was found guilty of interference with a police officer and public nuisance.

Mr. Sikora asked that I help him appeal the decision, and timely did so. The Court took its time in rendering a decision, but eventually did so without a hearing. I was waiting for the decision for some time, and Mr. Sikora kept asking for updates, to which I would reply there was none. As I was preparing for a request for a hearing or review this summer, I heard that the Court had rendered an opinion in favor of the state on the appeal. It was during this time that I had learned of my forthcoming suspension and told Mr. Sikora would not be able to further represent him. He asked to meet at least to exchange the file, and we had agreed over a weekend but I did not hear from him that weekend.

I have his file and am happy to return that to him. I have, however, provided him with all relevant material prior, during the lead to his trial and afterwards. He has made [sic] particularly concerned with subpoena's, [sic] and I have provided all that I have.

13. Mr. Sikora was provided with a copy of Respondent's response and was given the opportunity to submit additional evidence in support of his complaint. On October 3, 2019, additional documents were received from Mr. Sikora. On October 17, 2019, the new information received from Mr. Sikora was mailed to Respondent with a request for a response by October 31,

2019. A follow-up request dated November 14, 2019, met with no response. As of May 14, 2020, Respondent has yet to return Mr. Sikora's file.

14. Respondent's failure and refusal to cooperate with Bar Counsel's investigation in BPR No. 2019-075 constitutes a violation of Rule 8.1(b), W.R.Prof.Cond., and Rule 8(a), W.R.Disc.P. In addition, in failing to file an answer to the formal charge, Respondent is deemed to have admitted to violations of Rule 1.3 (diligence), Rule 1.4 (communication with client) and Rule 1.16 (termination of representation).

<u>BPR No. 2019-126</u>

15. On October 22, 2019, Bar Counsel received a new complaint against Respondent, submitted on behalf of two of Respondent's former clients, Isaac and Courtney Gordon, whom Respondent represented in litigation with Big Sky Insulation, Inc. ("Big Sky"). The complaint provided evidence that Respondent acted incompetently and fraudulently in his representation of the Gordons, who engaged new counsel to file a malpractice suit against Respondent in the Second Judicial District Court, Albany County, Wyoming, on October 15, 2019.

16. The malpractice complaint generally alleged that in Respondent's representation of the Gordons in litigation with Big Sky Insulations, Inc., Respondent failed to comply with the court's scheduling order; failed to prepare his clients' case; failed to conduct discovery; failed to respond to discovery; caused his clients to be sanctioned for discovery violations; and failed to inform his clients of settlement offers or of sanctions that had been levied against them as a result of Respondent's misconduct. Respondent produced a settlement agreement purportedly signed by his clients, but the signatures were not the clients'. The malpractice complaint included allegations of fraud/forgery, constructive fraud, professional negligence, breach of

4

contract and equitable indemnification. The complaint sought compensatory damages in the amount of $250,000 and exemplary damages in the amount of $100,000.

17.     On October 25, 2019, Bar Counsel sent a copy of the Woelk complaint to Respondent and asked him to respond, identifying possible violations of Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication with client), 3.4(c) (disobeying rules of the tribunal) and 8.4(c) (dishonest conduct). Respondent did not respond.

18.     On November 12, 2019, Respondent filed a one-paragraph answer to the district court malpractice action, stating:

> Comes Now, Michael J. Pearce, Pro Se, and hereby offers a general denial of all of the accusations included in the Plaintiff's response [sic] and requests, pursuant to Rule 40(A)(2) of the Wyoming Rules of Civil Procedure, to proceed towards methods of alternative dispute resolution to resolve this matter.

19.     The attorney who filed the malpractice action on behalf of the Gordons testified at Respondent's sanction hearing regarding troublesome things he discovered in Respondent's files relating to the representation. Most troubling was confirmation that Respondent had forged the Gordon's names on a settlement agreement with Big Sky and never told his clients about the settlement. They did not learn about it until they were served with a summons and complaint in a subsequent action brought by Big Sky to enforce the settlement agreement.

20.     Gordon's malpractice attorney testified that in reviewing Respondent's file relating to the Gordons' case against Big Sky, he found several documents showing that Respondent had "practiced" signing the Gordons' names to match their actual signatures.

21.     Respondent did not have professional liability coverage for the Gordons' claims. The malpractice case was eventually settled by means of a stipulated judgment against Respondent in the amount of $75,000. In the stipulated judgment, Respondent admitted that the facts alleged in the complaint against him "are true and accurate." In response to questioning by

5

the hearing Chair, Respondent admitted to forging the Gordons' names on the Big Sky settlement agreement, along with other troublesome conduct committed by Respondent in his representation of the Gordons.

22. In his representation of the Gordons, Respondent violated Rule 8.4(c) (dishonest conduct), W.R.Prof.Cond. In addition, in failing to file an answer to the formal charge, Respondent is deemed to have admitted to violations of Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication with client), and 3.4(c) (disobeying rules of the tribunal). Finally, Respondent violated Respondent's failure and refusal to cooperate with Bar Counsel's investigation in BPR No. 2019-126 constitutes separate violations of Rule 8.1(b), W.R.Prof.Cond., and Rule 8(a), W.R.Disc.P.

23. In committing the foregoing misconduct, Respondent violated duties owed to the client, the public, and the legal system. The Panel finds that violating Rule 8.4(c), Respondent engaged in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on Respondent's fitness to practice.

24. The Panel finds that in violating Rule 8.1(b), W.R.Prof.Cond., and Rule 8(a), W.R.Disc.P., Respondent knowingly engaged in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for Respondent.

25. In committing the foregoing misconduct, Respondent acted with intent, i.e., with the conscious objective or purpose of accomplishing a particular result.

26. Respondent's misconduct imposed actual injury upon clients, the judicial process and the legal profession.

27. The following aggravating factors are present in this case:

    a. Prior disciplinary offenses. Respondent is presently suspended pursuant to a one-year order of suspension commencing August 22, 2019. The suspension was ordered for Respondent's violations of

Rule 1.1 (competence), Rule 1.3 (diligence), Rule 1.4 (communication with client), 3.4(c) (knowingly disobeying an obligation existing under the rules of the tribunal), and Rule 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). *See Board of Prof. Resp. v. Pearce*, 2019 WY 85, 446 P.3d 717 (Wyo. 2019).

In addition, Respondent was the recipient of a private reprimand in 2018 for violations of Rules 1.1 (competence), 3.3(a) (lack of candor to the tribunal) and 3.4(c) (knowingly disobeying an obligation existing under the rules of the tribunal).

b. Dishonest or selfish motive.

c. A pattern of misconduct. In significant respects, the misconduct committed by Respondent in this matter is disturbingly similar to the conduct that led to Respondent's present, one-year suspension.

d. Multiple offenses.

e. Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. In addition to violating Rule 8.1(b), W.R.Prof.Cond., and Rule 8(a), W.R.Disc.P., the Panel notes that Respondent has not paid the administrative fees and costs that were assessed in his one-year suspension, nor did Respondent comply with his obligation to file an affidavit pursuant to Rule 21, W.R.Disc.P.

28. With respect to mitigating factors, the Panel finds that Respondent may suffer from personal or emotional problems.

29. The Panel finds that Respondent's entry into a stipulated judgment in the legal malpractice case brought by the Gordons is a factor which is neither aggravating nor mitigating.

30. In light of the findings set forth above, the Panel finds that the appropriate sanction for Respondent's misconduct is disbarment.

### Conclusions of Law

31. Rule 8.1(b), W.R.Prof.Cond., provides in relevant part, "[A] lawyer, ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority ..."

7

32.    Rule 8.4(c), W.R.Prof.Cond., provides, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation ..."

33.    Rule 8(a), W.R.Disc.P., provides in relevant part, "Misconduct by an attorney, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship: ... [f]ailure to respond without good cause shown to a request by Bar Counsel ..."

34.    Rule 15(b)(3)(D), W.R.Disc.,P., lists the factors to be considered in determining lawyer sanctions:

(D)    In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions, which standards shall be applied by the BPR in determining the appropriate sanction:

(i)    Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii)    Whether the lawyer acted intentionally, knowingly, or negligently;

(iii)    The actual or potential injury caused by the lawyer's misconduct; and

(iv)    The existence of any aggravating or mitigating factors.

35.    The American Bar Association's Standards for Imposing Lawyer Sanctions (the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

36.    ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct, and essentially mirrors the language of Rule 15(b)(3)(D), W.R.Disc.Proc.:

8

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

44.     Standard 5.1 sets forth the sanction guidelines for lawyers who demonstrate a failure to maintain personal integrity and is applicable to situations in which lawyers have committed a violation of Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation):

5.1   *Failure to Maintain Personal Integrity*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

5.11  Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12  Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

5.13  Reprimand [i.e., "public censure" under Rule 9(a)(3), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

9

5.14 Admonition [i.e., "private reprimand" under Rule 9(a)(4), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

45.    Respondent's violation of Rule 8.1(b), W.R.Prof.Cond., and Rule 8(a), W.R.Disc.P., implicates ABA Standard 7.0:

### 7.0 Violations of Other Duties Owed as a Professional

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.

7.1    Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent [i.e., "private reprimand" under Rule 9(a)(4), Wyo.R.Disc.Proc.]to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public or the legal system.

7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.3    [Public censure] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.4.    [Private reprimand] is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.

46.    In this respect, courts have imposed disbarment in circumstances similar to those involved in Respondent's case. See, e.g., In re Bourcier, 939 P.2d 604, 606 (Or. 1997) (disbarment for lawyer who, among other misconduct, repeatedly failed to respond to inquiries from the bar after court had previously suspended him for the same misconduct; "[t]his court considers the failure to cooperate with a disciplinary investigation to be a serious ethical

10

violation"); *In re Dickerson*, 905 P.2d 1140 (Or. 1995) (disbarment under Standard 7.1, inter alia, for lawyer who violated rule governing duty to cooperate by failing to respond to inquiries from disciplinary counsel after being notified personally by the bar that he was the subject of investigation; lawyer's cumulative misconduct, including lying to clients, converting clients' funds to his own use, failing to account for clients' funds, failing to return clients' property or files, and neglecting legal matters entrusted to him by clients, mandated disbarment); *In re Disciplinary Proceeding Against Simmerly*, 285 P.3d 838, 851-52 (Wash. 2012) (applying Standard 7.1, court disbarred lawyer who, inter alia, made intentional misrepresentations in context of bar disciplinary investigation; board correctly recharacterized the injury as serious, relying on earlier decision in which court "stated unequivocally that '[f]alsifying information during an attorney discipline proceeding' itself harms the public and the legal system") (citation omitted); *In re Disciplinary Proceeding Against Scannell*, 239 P.3d 332, 342 (Wash. 2010) (presumptive sanction is disbarment for lawyer who, inter alia, intentionally failed to cooperate in disciplinary proceedings with intent to frustrate and delay those proceedings: "If every lawyer subject to a disciplinary investigation were as intransigent as [he] has been, disciplinary proceedings would be expensive, long, and hard-fought procedural wars that might or might not be effective at uncovering wrongdoing and protecting the public. In short, [lawyer's] behavior poses a serious threat to lawyer self-regulation and is rightfully redressed under ABA *Standards* standard 7.1.").

47.    The preamble to the ABA Standards includes the following discussion regarding mental state:

> The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the

11

conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

48. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury."

49. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

12

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

9.3 *Mitigation*

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

13

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4 *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

50. With respect to costs of disciplinary proceedings, Rule 25, W.R.Disc.P., provides:

Rule 25. Expenses and Costs.

(a) The expenses of members of the BPR, the ROC, Bar Counsel, and Special Bar Counsel, costs of a Disciplinary Judge, and other expenses incurred in the implementation or administration of these rules, shall be paid with funds allocated for that purpose by the Wyoming State Bar. The Wyoming State Bar shall compensate and pay the expenses of Disciplinary Judges.

(b) In addition to any costs assessed by the BPR, the ROC or the Court, an administrative fee of seven hundred fifty dollars ($750.00) shall be imposed by the BPR in all cases where private discipline, diversion, or public discipline is ordered. The administrative fee shall be assessed on a per-complaint basis.

(c) "Costs" means actual expenses incurred by Bar Counsel, the ROC, the BPR, and the Wyoming State Bar in connection with a disciplinary proceeding, reinstatement proceeding or diversion program, including without limitation the cost of depositions used in a proceeding, hearing transcripts, copying costs, conference call and other telephone expenses, fees for service of process and subpoenas, witnesses fees, fees paid to expert witnesses, and costs associated with

14

travel, meals and lodging for the ROC, the BPR, the BPR Clerk and the Office of Bar Counsel.

(d) When an attorney is privately disciplined, the BPR or the ROC may assess against the attorney the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee.

(e) When public discipline is recommended by the BPR, it shall certify to the Court the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee. The BPR may recommend to the Court the assessment of those costs and, if the Court imposes discipline, the Court may assess all or any part of the certified costs, together with the administrative fee, against respondent.

(f) In any case where costs and fees are assessed, they shall be paid to the Wyoming State Bar.

## Recommendation

Based upon the foregoing findings and conclusions, the Hearing Panel recommends that the Court issue an order of disbarment to Respondent; that Respondent be required to pay an administrative fee of $1,500.00 as provided in Rule 25(b), W.R.Disc.P.; and that Respondent be required to reimburse the Wyoming State Bar for certified costs of this proceeding as provided in Rule 25(e), W.R.Disc.P.

Dated this 9th day of May, 2020.

*Christopher Hawks*
_____
Christopher H. Hawks
Hearing Panel Chair
Board of Professional Responsibility
Wyoming State Bar

15